# EXHIBIT A

# SUMMONS AND COMPLAINT

# COMMONWEALTH OF VIRGINIA



CHESTERFIELD COUNTY CIRCUIT CO
Civil Division
9500 COURTHOUSE ROAD
CHESTERFIELD  VA  23832-0909

Summons

To: VIRGINIA DEPARTMENT OF STATE
POLICE
COLONEL W STEVEN FLAHERTY
ADMINISTRATIVE HEADQUARTERS
7700 MIDLOTHIAN TURNPIKE
N CHESTERFIELD VA 23235

Case No. 041CL22004205-00

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment, or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on, Thursday, December 15, 2022

Clerk of Court: WENDY S HUGHES

by _____
                                    (CLERK/DEPUTY CLERK )

Instructions:

Hearing Official:

CRIMINAL JUSTICE
INFORMATION SERVICES
DEC 2 8 2022
DUTY SERGEANT

Attorney's name:        RAWLS, BREWSTER S

VIRGINIA:

IN THE CIRCUIT COURT FOR THE COUNTY OF CHESTERFIELD

| | |
|---|---|
| JONATHAN R. CLARK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. _____ |
| | ) |
| VIRGINIA DEPARTMENT OF | ) |
| STATE POLICE, | ) |
| | ) |
| Defendant. | ) |

Serve:  Colonel W. Steven Flaherty, Superintendent
        Virginia Department of State Police
        Administrative Headquarters
        7700 Midlothian Turnpike
        North Chesterfield, Virginia 23235

## **COMPLAINT**

Plaintiff, by counsel, for his Complaint against Defendant, Virginia State Police, states as

follows:

### Jurisdiction and Venue

1.     This is a suit against a state agency employer for declaratory, monetary and

equitable relief to redress interference with statutory employment rights, retaliation and

discrimination because of the Plaintiff's lawful exercise of those rights, all in violation of the

Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), Pub. L.

103-353, codified as amended at 38 U.S.C. §§4301 *et seq*. The Court has jurisdiction pursuant to

Va. Code §§ 8.01-184 to 194, 17.1-513 and 38 U.S.C. § 4323(b)(2), and other applicable law.

2. Jurisdiction is appropriate due to the recent Supreme Court ruling in *Torres v. Texas Department of Public Safety*, 142 S. Ct. 2455 (2022) which held that a state government or state entity employer may not utilize the defense of sovereign immunity for claims arising under USERRA.

3. Venue under Va. Code § 8.01-262 is proper in Chesterfield County, Virginia, where the principal office of the Defendant is located, and Plaintiff's cause of action arose.

### Parties

4. Plaintiff, Jonathan R. Clark ("Mr. Clark"), resides in Stuart, Virginia.

5. Defendant is the Virginia Department of State Police ("VSP"), an entity of the Commonwealth of Virginia. VSP is an "employer" within the meaning of 38 U.S.C. § 4303(4)(A)(iii).

### Factual Background

6. Mr. Clark is a Sergeant with the VSP assigned to the Martinsville Office—Area 42—which is part of the agency's Division 6. Mr. Clark has dedicated his career to the protection and safety of the citizens of Martinsville, Henry County and other Virginia localities within Division 6.

7. Mr. Clark also has served in the United States Army for 19 years and is a Major in the United States Army Reserve ("USAR").

8. Mr. Clark went to work for VSP in 1995. At that time, he was an Army veteran but had not yet reenlisted in the USAR.

9. Due to his exemplary performance for VSP, Mr. Clark was promoted to Sergeant in 2002, a rank he still holds today.

2

10. Mr. Clark reenlisted in the USAR in 2003. Mr. Clark's duties for the USAR include training sessions (called drills), which take place one weekend per month. Once every year, USAR conducts a prolonged "mission," which Mr. Clark is required to attend. Mr. Clark's USAR duties require him to take leaves of absence from the VSP for USAR drills and missions. As a reservist, Mr. Clark had to be prepared to mobilize on short notice for deployment, and since August 28, 2017, he has been on full-time active duty with the Active Guard Reserve ("AGR"), currently stationed overseas.

11. Mr. Clark has diligently worked with VSP and USAR to ensure that he is meeting his obligations for both employers. Mr. Clark has at all times relevant to this action met his employment obligations under USERRA to VSP by timely informing VSP of his pending military service obligations, and timely applying for reemployment upon completion of those obligations.

12. In September 2007, a new First Sergeant, Robert J. Shupe ("First Sergeant Shupe"), was assigned to Martinsville to work under Captain Richard Denney ("Captain Denney"). Captain Denney at all relevant times was the highest-ranking officer in VSP's Division 6, which covers the cities of Lexington, Roanoke and Martinsville as well as the surrounding counties and municipalities.

13. The pattern and practice of discrimination by VSP against Mr. Clark escalated in January 2008 when Mr. Clark notified First Sergeant Shupe that he would be unable to attend a VSP training as a result of an unavoidable conflict with a USAR mission.

14. From that point forward, VSP officials harassed Mr. Clark about taking military leave. First Sergeant Shupe attempted to mislead Mr. Clark by instructing him that he was only entitled to 15 days of military absence. In addition to making this false statement, First Sergeant

3

Shupe threatened not to approve Mr. Clark's request for annual paid leave to cover his USAR absences. First Sergeant Shupe compared Mr. Clark's USAR service to the duties of a part-time greeter at Wal-Mart. "If you don't like it, you need to quit the Army, quit the State Police, or transfer," First Sergeant Shupe declared. First Sergeant Shupe made these false statements willfully with the express or implied support, endorsement, approval or ratification of Captain Denney and others within VSP.

15.      In February 2008, First Sergeant Shupe again confronted Mr. Clark about upcoming USAR leave. First Sergeant Shupe demanded that Mr. Clark put him in contact with the USAR Commanding Officer in order to "set [that Officer] straight."

16.      Captain Denney, the supervisor of First Sergeant Shupe, did nothing to prohibit or restrain First Sergeant Shupe's ongoing harassment of Mr. Clark or otherwise protect him from future discrimination.

17.      On March 24, 2008, Mr. Clark was called to active duty, effective April 1, 2008. As such, Mr. Clark immediately and timely notified his VSP supervisors, including First Sergeant Shupe, his Lieutenant, and Captain Denney of his pending military service obligations.

18.      Mr. Clark had a period of five workdays and one weekend to get his affairs in order in preparation for his impending mobilization. During that time, Mr. Clark secured childcare, rented his home, changed insurance policies to reflect that he would be a landlord, and accomplished various other tasks in order to be away from home for a prolonged period of time. At the same time, Mr. Clark had to, and did, complete his duties for VSP.

4

19.     Mr. Clark was mobilized from April 1, 2008, through January 31, 2011, in support of "Operation Enduring Freedom." Upon completion of this mobilization, Mr. Clark timely applied for reemployment with VSP.

20.     When Mr. Clark returned to work for VSP on February 14, 2011, he faced four allegations of misconduct initiated in bad faith by First Sergeant Shupe at the direction of Captain Denney. Those false allegations included failure to return a department laptop, failure to complete administrative profiles, failure to provide notes on subordinate troopers, and use of profanity. All of these baseless allegations arose from purported misconduct by Mr. Clark on the eve of his mobilization. Citing these fabricated charges, Captain Denney issued a Group II written notice, which rendered Mr. Clark ineligible for a promotion for three years. In issuing this Group II written notice, Captain Denney together with First Sergeant Shupe and other VSP agents willfully violated USERRA by attempting to create a written disciplinary record that would prevent Mr. Clark from advancing within the VSP ranks, provide a pretext for his dismissal, and convince him to resign to avoid termination.

21.     In response to the Group II written notice, Mr. Clark filed a USERRA complaint under VSP's grievance procedure. Captain Denney testified against Mr. Clark at the grievance hearing. An independent hearings officer appointed by another state agency rejected Captain Denney's testimony and found that VSP officials harassed Mr. Clark prior to and during his mobilization and committed blatant violations of USERRA. The hearings officer, in a decision dated January 31, 2012, reversed and removed from Mr. Clark's file the Group II written notice issued by Captain Denney. VSP did not appeal the hearings officer's ruling, which is appended as Exhibit A.

5

22.     Because the hearings officer removed the Group II notice from his record in 2012,
Mr. Clark was able to seek promotions based on his rank and tenure with VSP. As one of the most
senior Sergeants in his district, Mr. Clark by any reasonable measure should have been a
competitive candidate for open First Sergeant positions or other job opportunities within Division
6 or other VSP command areas.

23.     In August 2013, Mr. Clark applied to fill a vacant First Sergeant position in
Lexington, Virginia. He was one of five selected to be interviewed for this promotion, which would
have been accompanied by a raise in his compensation and an increase in his authority within VSP.
By letter dated September 23, 2013, VSP notified Mr. Clark that he was not selected to fill the
opening. In a follow up interview, a VSP official told Mr. Clark that he "should not lead with his
military experience," or words to that effect.

24.     In October 2013, Mr. Clark applied to fill a First Sergeant opening in Danville,
Virginia. He again was selected for an interview, but not offered the promotion.

25.     In November 2014, Mr. Clark again applied for a First Sergeant opening in
Lexington. He was interviewed, but VSP notified him by letter dated December 10, 2014 that he
did not get the promotion.

26.     VSP appointed three-person panels to select the successful candidates for the First
Sergeant positions described above in paragraphs 22-24.

27.     Captain Denney was the highest-ranking officer on each of the three-person panels
that denied Mr. Clark the First Sergeant position openings in Division 6 described in paragraphs
22-24, above.

6

28.    In rejecting Mr. Clark's applications for the First Sergeant position openings described above in paragraphs 22-24, Captain Denney and others were animated by hostility toward Mr. Clark because of the performance of his military duties, exercise of his USERRA rights, his successful grievance challenge to VSP's USERRA violations and other protected activity on Mr. Clark's part.

29.    With respect to each of the First Sergeant position openings described above in paragraphs 22-24, Mr. Clark was the most qualified candidate in terms of seniority, skills, experience, training, education and other relevant selection criteria.

30.    VSP's stated reasons for selecting unqualified or less qualified candidates for the open First Sergeant positions described in paragraphs 22-24 above were false or otherwise pretextual rationales designed to conceal VSP's actual discriminatory intent, unlawful motives and willful disregard for its obligations under USERRA.

31.    VSP's retaliatory, discriminatory, and otherwise unlawful rejection of Mr. Clark's applications for the First Sergeant positions described in paragraphs 22-24 and denial of other promotional opportunities constituted adverse employment actions within the meaning of 38 U.S.C. § 4311(b) and other sections of USERRA.

32.    Since 2002, Mr. Clark has not been appointed or promoted to a higher position, while others in his division have been promoted from below him to above him in the Division 6 ranks or chain of command.

33.    Starting in 2007 and continuing to the present, VSP agents including Captain Denney have harassed and systematically denied promotions to Mr. Clark and others engaged in military service covered by USERRA.

7

34.     As a result of VSP's unlawful conduct, Mr. Clark has suffered financial loss and loss of career advancement since 2013 when he first applied for a promotion within Division 6.

35.     All of Mr. Clark's military leaves of absences were covered and protected by USERRA. Mr. Clark has always been released from active duties with the armed forces with an honorable discharge and remains a member in good standing of the USAR.

36.     Mr. Clark always reported for duty at VSP in a timely manner after his mobilization and other USAR drill services.

## Count I: Discrimination under USERRA

37.     Mr. Clark restates and realleges paragraphs 1 through 36 as if fully stated herein.

38.     As a member of the USAR, Mr. Clark was at all relevant times entitled to the protections of USERRA.

39.     Because Mr. Clark is eligible for the protections of USERRA, VSP is prohibited by 38 U.S.C. § 4311(a) and (b) and other applicable statutory and regulatory provisions from discriminating against Mr. Clark based on his military service.

40.     VSP likewise is prohibited from discriminating against Mr. Clark for exercising and seeking enforcement of his rights under USERRA.

41.     VSP willfully violated USERRA by systematically denying Mr. Clark promotional opportunities, including but not limited to those described above in paragraphs 22-24, because of:

   a.     His use of military leave;

   b.     His successful grievance that resulted in a finding that VSP had blatantly violated USERRA; and

   c.     His other protected activities under USERRA.

8

41.     VSP took these discriminatory actions against Mr. Clark because of his military status, performance of his military duties, exercise of USERRA rights and his protected activities under USERRA.

42.     Because of his military leaves of absence, VSP continues to discriminate willfully against Mr. Clark in violation of USERRA by refusing to award him the one-level promotion he deserves and earned through numerous years of service to the Commonwealth of Virginia. Unless he receives the injunctive relief as requested below, Mr. Clark shall suffer irreparable harm. Mr. Clark lacks an adequate remedy at law to redress VSP's continuing refusal to promote him to First Sergeant.

43.     As a direct and proximate result of VSP's violations of USERRA, Mr. Clark has sustained and shall continue to suffer lost benefits of employment, including but not limited to salary, fringe benefits and other forms of compensation, as well as lost career opportunities.

Count II: Retaliation under USERRA

44.     Mr. Clark restates and realleged paragraphs 1 through 43 as if fully stated herein.

45.     Because Mr. Clark is eligible for the protections of USERRA, VSP is prohibited by 38 U.S.C. § 4311(a) and (b) from retaliating against him because of his military status or his protected actions to enforce his rights and protections under USERRA.

46.     VSP knowingly and willfully retaliated against Mr. Clark for taking military leave and for protesting or grieving VSP's harassment in violation of USERRA and otherwise engaging in protected activity.

9

47.     Because Mr. Clark exercised his right to military leave and successfully filed a grievance protesting VSP officials' substantial USERRA violations, VSP has systematically denied Mr. Clark a one-level promotion to First Sergeant.

48.     As a direct and proximate result of VSP's unlawful reprisals against Mr. Clark in violation of USERRA, he has suffered the past and ongoing harms, losses, injuries, and damages described in paragraphs 42-43 supra.

WHEREFORE, Plaintiff Jonathan R. Clark, respectfully prays that the Court:

a)    Empanel a jury to hear his claims;

b)    Declare that VSP violated his rights under USERRA;

c)    Promote or enter an injunction compelling VSP to promote him to the position of First Sergeant in Division 6;

d)    Award him actual damages in the form of back salary, retirement contributions, reasonable rate of return on said retirement contributions, and fringe benefits from when he was denied advancement opportunities beginning in 2013 through the date of trial;

e)    In addition to the foregoing actual damages, award him liquidated damages in an amount not to exceed the amount of his actual damages, all as provided by 38 U.S.C. § 4323(d) and other applicable law;

f)    Mandate that VSP officials undergo training in the rights and responsibilities of employees and employers under USERRA and enjoin them from continuing to violate Clark's and others' rights under USERRA;

10

g)   Award him attorney's fees, expert witness fees, and other litigation expenses, all as provided under 38 U.S.C. § 4323(h)(2);

h)   Award him prejudgment and post judgment interest on the actual damages, liquidated damages, attorney's fees and other sums he recovers; and

i)   Grant him such further monetary, equitable, injunctive and declaratory relief as the Court finds appropriate.

A trial by jury is demanded.

Plaintiff reserves his right to amend this pleading as necessitated by discovery.

Respectfully submitted,

JONATHAN R. CLARK

By:

Brewster S. Rawls, VSB #23604
Harrison W. "Whit" Long, VSB #92366
Rawls Law Group
211 Rocketts Way
Suite 100
Richmond, Virgina 23231
(804) 344-0038
brawls@rawlslawgroup.com

Brian J. Lawler, Esq. (*pro hac vice* pending)
Pilot Law, P.C.
4632 Mt. Gaywas Drive.
San Diego, California 92117
(619) 255-2398
blawler@pilotlawcorp.com

Counsel for Plaintiff

11

COMMONWEALTH OF VIRGINIA
DEPARTMENT OF EMPLOYMENT DISPUTE RESOLUTION
DIVISION OF HEARINGS
DECISION OF HEARING OFFICER
In Re: Case No: 9716

Hearing Date: January 17, 2012
Decision Issued: January 31, 2012

## PROCEDURAL HISTORY

The Grievant was issued a Group II Written Notice on July 20, 2011 for:

> The employee failed to complete interim evaluations as required. The aforementioned actions constitute a violation of General Order ADM 12.02, paragraph 12(b)(1) that is a Group II offense which states, "Failure to follow supervisor's instructions, perform assigned work or otherwise comply with applicable established written policy." The employee also referred to a supervisor as an "asshole" in the presence of two fellow employees. The aforementioned actions constitute a violation General Order ADM 12.02, paragraph 13(b)(20) that is a Group III offense which states, "Engaging in conduct, whether on or off the job, that undermines the effectiveness or efficiency of the Department's activities. This includes actions which might impair the Department's reputation as well as the reputation or performance of its employees." Only one Group II Written Notice will be issued to the employee. [1]

Pursuant to the Group II Written Notice, no disciplinary action was taken against the Grievant, other than to place the Notice in his file. [2] On August 19, 2011, the Grievant timely filed a grievance to challenge the Agency's actions. [3] On December 5, 2011, the Department of Employment Dispute Resolution ("EDR") assigned this Appeal to a Hearing Officer. Due to conflicts in the calendars for both parties, the hearing was delayed until January 17, 2012. Pursuant to issues raised regarding the Uniformed Services Employment and Re-Employment Rights Act (USERRA), the Hearing Officer allowed both the advocate for the Agency and counsel for the Grievant to file Supplemental Briefs with the Hearing Officer on or before Tuesday, January 24, 2012. Such Supplemental Briefs were received by the Hearing Officer on January 24, 2012 and January 25, 2012.

---

[1] Agency Exhibit 1, Tab 1, Page 1

[2] Agency Exhibit 1, Tab 1, Page 1

[3] Agency Exhibit 1, Tab 1, Page 2



EXHIBIT
A'

## APPEARANCES

Advocate for the Agency
Counsel for Grievant
Grievant
Witnesses

## ISSUE

1.    Did the Grievant violate General Order ADM 12.02, Paragraph 12(b)(1)?

2.    Did the Grievant violate General Order ADM 12.02, Paragraph 13(b)(20)?

## AUTHORITY OF HEARING OFFICER

Code Section 2.2-3005 sets forth the powers and duties of a Hearing Officer who presides over a grievance hearing pursuant to the State Grievance Procedure. Code Section 2.2-3005.1 provides that the Hearing Officer may order appropriate remedies including alteration of the Agency's disciplinary action. Implicit in the Hearing Officer's statutory authority is the ability to independently determine whether the employee's alleged conduct, if otherwise properly before the Hearing Officer, justified termination. The Court of Appeals of Virginia in *Tatum v. VA Dept of Agriculture & Consumer Servs.* 41 VA. App. 110, 123, 582 S.E. 2d 452, 458 (2003) held in part as follows:

> While the Hearing Officer is not a "super personnel officer" and shall give appropriate deference to actions in Agency management that are consistent with law and policy...the Hearing Officer reviews the facts de novo...as if no determinations had been made yet, to determine whether the cited actions occurred, whether they constituted misconduct, and whether there were mitigating circumstances to justify reduction or removal of the disciplinary action or aggravated circumstances to justify the disciplinary action. Thus the Hearing Officer may make a decision as to the appropriate sanction, independent of the Agency's decision.

## BURDEN OF PROOF

The burden of proof is on the Agency to show by a preponderance of the evidence that its disciplinary action against the Grievant was warranted and appropriate under the circumstances. Grievance Procedure Manual ("GPM") §5.8. A preponderance of the evidence is sometimes characterized as requiring that facts to be established more probably than not occurred, or that

they were more likely than not to have happened. [4] However, proof must go beyond conjecture. [5] In other words, there must be more than a possibility or a mere speculation. [6]

## FINDINGS OF FACT

After reviewing the evidence presented and observing the demeanor of each witness, the Hearing Officer makes the following findings of fact:

The Agency provided the Hearing Officer with a notebook containing eight (8) tabbed sections and that notebook was accepted without objection as Agency Exhibit 1.

The Grievant provided the Hearing Officer with a notebook containing twenty-five (25) tabbed sections, only seven (7) of which had data, and that notebook was accepted without objection as Grievant Exhibit 1.

The factual background of this matter is essentially undisputed by either the Grievant or the Agency. The interpretation and application of regulations and statutes to those facts is highly contested. The Grievant was a longtime employee of this Agency and was also a member of the Army Reserve Forces of the United States of America. On March 24, 2008, the Grievant was notified that he was being called to active duty, effective April 1, 2008. [7] Pursuant to this notification, the Grievant immediately notified his first Sergeant, his Lieutenant and his Captain.

From the time of his notification of his call to active duty, until he was ordered to report, the Grievant had to put all of his personal affairs into a position where they could exist without his presence for an extended period of time. The evidence in this case was that the Grievant was gone effectively from April 1, 2008, until February 14, 2011. The Grievant had to complete such things as renting his home, securing appropriate care for his daughter, change insurance policies to reflect that he was no longer a homeowner but now a landlord, put his life in order to be gone for three (3) years, and at the same time, complete his duties for the Agency.

At the time of his call to active duty, the Grievant was in the process of investigating and completing two (2) complaints that had been filed against various members of the Agency. Further, because of his call to active duty, interim evaluations would be due for the approximate ten (10) troopers who reported to the Grievant. State Police General Order 11(8)(c), states as follows:

The supervisor shall complete an interim performance evaluation if:

(1) the supervisor leaves during the performance cycle;

---

[4] *Ross Laboratories v. Barbour*, 13 Va. App. 373, 377, 412 S.E. 2d 205, 208 1991

[5] *Southall, Adm'r v. Reams, Inc.*, 198 Va. 545, 95 S.E. 2d 145 (1956)

[6] *Humphries v. N.N.S.B., Etc., Co.*, 183 Va. 466, 32 S.E. 2d 689 (1945)

[7] Agency Exhibit 1, Tab 1, Page 15

(2) after 6 months into the performance cycle, an employee transfers, promotes, or demotes into a new position with a different supervisor within an agency or between state agencies in the Executive Branch;

(3) he/she is experiencing performance deficiencies with an employee; or

(4) the evaluation is requested by the employee. [8]

State Police General Order 11(8)(c)(1) is the only section that applies to this Grievant.

March 25, 2008 was a Tuesday. March 31, 2008 was a Monday. Accordingly, the Grievant had five (5) workdays and one (1) weekend to complete everything that he needed to do to put his personal life in order as well as to complete his requirements for the Agency.

The Grievant had access to a computer which was provided to him by the Agency. He used this to complete the various types of paperwork that were required by his position. This computer became an issue of contention. There was some oral testimony and documentary evidence which would indicate that the Grievant was ordered to return the computer prior to April 1, 2008. There was other oral testimony and documentary evidence that would indicate that the Grievant received permission to maintain possession of this computer to assist him in preparing the paperwork which was required of him by the Agency.

There was complete agreement that the computer was returned to the Agency on April 9, 2008. The computer was returned to the Agency by the Grievant because the Lieutenant, to whom he had referred to in a pejorative way, persisted in calling the Grievant's superiors in the Armed Forces of the United States of America and complained to them about the Grievant having possession of this computer. After what appears to this Hearing Officer as excessive complaining by this Agency Lieutenant to an Army Lieutenant Colonel, the Grievant returned the computer and delivered it to two (2) fellow Sergeants in the parking lot of the Agency headquarters. It is important to note that the Grievant was also a Sergeant at this Agency. Accordingly, the computer was returned to equal-ranking officers with no one else present. There is agreement that this is where the Grievant referred to the Lieutenant as an "asshole."

The Agency has alleged that the Grievant violated General Order ADM 12.02 in two (2) instances. The first is 12.02(12)(b)(1), wherein the Agency alleges that the Grievant committed the following offense:

> Failure to follow supervisor's instructions, perform assigned work or otherwise comply with applicable established written policy. [9]

The second allegation is that the Grievant violated 12.02(13)(b)(20), wherein the Agency alleges that the Grievant committed the following offense:

> Engaging in conduct, whether on or off the job, that undermines the effectiveness or efficiency of the Department's activities. This includes

---

[8] Agency Exhibit 1, Tab 6, Page 8

[9] Agency Exhibit 1, Tab 7, Page 7

JAN/31/2012/TUE 02:20 PM                        FAX No. 804-    -1906                      P. 006/009

actions which might impair the Department's reputation as well as the reputation or performance of its employees. [10]

As stated earlier in this Decision, the facts are crystal-clear in this matter. In summary, the Grievant was given activation orders on March 24, 2008, he reported for duty on April 1, 2008. He did not complete the interim evaluations that were necessitated because of his activation and he did in fact refer to the Lieutenant as an "asshole."

Regarding the failure to complete the interim evaluation reports, the Hearing Officer finds that those reports are important and need to be completed when possible. The Agency's General Order 11 contemplates those reports being filled out when a supervisor, such as the Grievant, transfers, is promoted, or is demoted. When the Hearing Officer questioned the Captain that originated the Written Notice in this matter, the Captain acknowledged that, if a supervisor died, became incompetent, or was fired, the Agency would find other means to generate the interim reports. General Order 11 does not seem to contemplate an employee of the Agency being called to active duty with little or no notice.

The Agency introduced, at Exhibit 1, Tab 5, Pages 1 through 5, two (2) forms that it alleges could have been used to produce the interim evaluation. The first form is found at pages 1 and 2 of Tab 5. The Captain testified that the Grievant would simply have been able to "check" one (1) box on the first page to complete this form, and it would have then been considered that he fully complied with his duties. That box simply states, "Employee is meeting all measures for the core responsibilities shown on the Employee Work Profile." [11]

The Captain seemed to indicate that would be sufficient, whether or not the Grievant thought that was adequate or not. This argument undermined the Captain's argument as to the integrity and importance of interim evaluations. The Grievant testified that he always used the second form (at Tab 5) which is a three (3) page document and the Grievant testified that he thought the documents required his considered input in order for them to be valuable. The Hearing Officer has to deal with the Agency employee who wrote this Written Notice stating that, "you simply check a box" and that is all that need be done and the Grievant indicating that he needed time to properly produce an interim evaluation that would be meaningful both to the Agency and the employee being evaluated.

All of this is impacted by USERRA. This Federal law was written in order to protect citizen soldiers. This law trumps all state laws, unless there is a state law that provides more and greater protections to the citizen soldier. There is no question that the interim evaluations were not done and there is great dispute as to whether or not the Grievant had reasonable time to prepare them. As of April 1, 2008, pursuant to USERRA, the Grievant was furloughed from the Agency and was no longer an employee of the Agency. Further, USERRA stands for the proposition that a citizen soldier cannot be punished because he or she must report to active duty. By definition, the interim evaluations would not have been needed but for the Grievant's activation. Said another way, if he is not activated, then there is no need for interim evaluations.

---

[10] Agency Exhibit 1, Tab 7, Page 9

[11] Agency Exhibit 1, Tab 5, Page 1

Pursuant to USERRA, on April 1, 2008, this Grievant had no duty or obligations to the Agency. Yet even so, while the Grievant was attempting to be both a member of the Army and to complete his prior obligations to the Agency, the Agency continued to harass its furloughed employee for the return of the Agency computer which would have allowed him to accomplish the fulfillment of his obligations to produce interim evaluations. For reasons not fully explained at the hearing, the Agency seems to have thought that the computer was used in either illegal or immoral ways. The clear testimony at the hearing was that, after the Agency had allowed its experts to examine the computer not once but twice, it could find nothing of the sort.

The Agency, in its oral evidence, attempted to make a large mountain out of a tiny grain of sand regarding the Grievant's reference to the Lieutenant as an "asshole." Indeed, the Agency would have the Hearing Officer believe that statement standing alone "undermined the effectiveness of the Agency." The Hearing Officer finds that argument to be farcical. The Grievant did not purchase a billboard on Interstate 81 making this announcement, the Grievant did not make this announcement at a public gathering, rather, the Grievant made this statement to two (2) equal-ranking officers and it was made after he had been forced to leave his job as a member of the Armed Forces of the United States of America to drive from his location to the Agency headquarters to return the computer. It does not take a great leap of imagination to imagine that the Grievant was not pleased with the Lieutenant.

Witnesses who testified before the Hearing Officer, both for the Agency and for the Grievant, acknowledged that they had heard lower ranking members of the Agency refer to higher ranking members of the Agency in a pejorative way and they had heard higher ranking members of the Agency refer to lower ranking members of the Agency in a pejorative way. No witness, neither Agency nor Grievant, could cite any example where they thought that those references diminished the effectiveness of this Agency.

The Agency called the Grievant's First Sergeant as a rebuttal witness. This witness was a primary ingredient regarding the issue of the return of the computer. He is the person who notified the Lieutenant of his suspicions regarding the computer. This witness, both by his tone, body language and phrasing of words, had many prior issues with the Grievant.

This witness' testimony included the quotation, "I learned quick I could not rely on [the Grievant.]" Without objection by the Agency, the Grievant introduced a statement from the Grievant's mother indicating that this witness came to her house, while the Grievant was on active duty, and severely frightened her in his pursuit of the infamous computer.

The First Sergeant's testimony was not helpful to the Agency.

Accordingly, the Hearing Officer finds that the reference to the Lieutenant in this matter is of no moment. First, the reference was made to equal-ranking members of the Agency and the Hearing Officer finds that that reference in and of itself did not diminish the effectiveness of this Agency. Second, pursuant to USERRA, the Grievant was not an employee of the Agency when he made that statement. When given the opportunity to file a brief in this matter, the Agency in no way addressed how USERRA impacted this statement.

Regarding the failure to complete the interim evaluations and how that related to "failure to follow a supervisor's instructions or perform assigned work," the Hearing Officer finds that the Grievant's failure was directly impacted by his call to active duty and that he was neither

allowed sufficient time nor was he allowed the use of the state computer in order to fulfill this task. Further, the Hearing Officer chooses not to fault the Grievant for wanting to perform the interim evaluations in a thoughtful and complete manner in opposition to the Agency's witness who testified that he could have just, "checked a box."

## MITIGATION

*Va. Code § 2.2-3005.1* authorizes Hearing Officers to order appropriate remedies including "mitigation or reduction of the Agency disciplinary action." Mitigation must be "in accordance with rules established by the Department of Employment Dispute Resolution..."[12] Under the Rules for Conducting Grievance Hearings, "a Hearing Officer must give deference to the Agency's consideration and assessment of any mitigating and aggravating circumstances. Thus a Hearing Officer may mitigate the Agency's discipline only if, under the record evidence, the Agency's discipline exceeds the limits of reasonableness. If the Hearing Officer mitigates the Agency's discipline, the Hearing Officer shall state in the hearing decision the basis for mitigation." A non-exclusive list of examples includes whether (1) the employee received adequate notice of the existence of the rule that the employee is accused of violating, (2) the Agency has consistently applied disciplinary action among similarly situated employees, (3) the disciplinary action was free of improper motive, (4) the length of time that the Grievant has been employed by the Agency, and (5) whether or not the Grievant has been a valued employee during the time of his/her employment at the Agency.

## DECISION

For reasons stated herein, the Hearing Officer finds that the Agency has not bourne its burden of proof in this matter and orders that the Group II Written Notice in this matter be removed from the Grievant's employment file.

## APPEAL RIGHTS

You may file an administrative review request within 15 calendar days from the date the decision was issued, if any of the following apply:

1. If you have new evidence that could not have been discovered before the hearing, or if you believe the decision contains an incorrect legal conclusion, you may request the Hearing Officer either to reopen the hearing or to reconsider the decision.

2. If you believe the hearing decision is inconsistent with state policy or Agency policy, you may request the Director of the Department of Human Resource Management to review the decision. You must state the specific policy and explain why you believe the decision is inconsistent with that policy. Please address your request to:

---

[12]Va. Code § 2.2-3005

JAN/31/2012/TUE 02:21 PM                    FAX No. 804-    1906                    P. 009/009

Director
Department of Human Resource Management
101 North 14th Street, 12th Floor
Richmond, VA 23219

3. If you believe that the hearing decision does not comply with the grievance procedure,
you may request the Director of EDR to review the decision. You must state the specific portion
of the grievance procedure with which you believe the decision does not comply. Please address
your request to:

Director
Department of Employment Dispute Resolution
600 East Main Street, Suite 301
Richmond, VA 23219

You may request more than one type of review. Your request must be in writing and must
be received by the reviewer within 15 calendar days of the date the decision was issued. You
must give a copy of your appeal to the other party and to the EDR Director. The Hearing
Officer's decision becomes final when the 15-calendar day period has expired, or when
administrative requests for a review have been decided.

You may request a judicial review if you believe the decision is contradictory to law.[13]
You must file a notice of appeal with the clerk of the circuit court in the jurisdiction in which the
grievance arose within 30 days of the date when the decision becomes final.[14]

[See Sections 7.1 through 7.3 of the Grievance Procedure Manual for a more detailed explanation
or call EDR's toll-free Advice Line at 888-232-3842 to learn more about appeal rights from an
EDR Consultant]

William S. Davidson
Hearing Officer

---

[13]An appeal to circuit court may be made only on the basis that the decision was
contradictory to law, and must identify the specific constitutional provision, statute, regulation or
judicial decision that the hearing decision purportedly contradicts. Virginia Department of State
*Police v. Barton*, 39 Va. App. 439, 573 S.E.2d 319 (2002).

[14]Agencies must request and receive prior approval from the Director of EDR before
filing a notice of appeal.